UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SEVIA WITCHER, | ) | |
| ex rel., S.T.D., a minor, | ) | Case No. 3:17CV1150 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | REPORT AND RECOMMENDATION |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Sevia Witcher ("Witcher" or "claimant's mother") challenges the final decision

of Defendant Commissioner of Social Security ("Commissioner"), denying claimant's

application for Supplemental Security Income benefits under Title XVI of the Social Security

Act, 42 U.S.C § 1381 *et seq*. ("Act").  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

This case is before the undersigned United States Magistrate Judge pursuant to an automatic

referral under Local Rule 72.2(b) for a Report and Recommendation.  The issue before the court

is whether the final decision of the Commissioner is supported by substantial evidence and,

therefore, conclusive.  For the reasons set forth below, the Magistrate Judge recommends that the

Commissioner's final decision be affirmed.

## I.  PROCEDURAL HISTORY

On September 12, 2013, Witcher protectively filed an application for Supplemental

Security Income ("SSI") benefits on behalf of her minor son, S.T.D. ("claimant"), with a

disability onset date of August 13, 2013.  (R. 9, PageID #: 83, 305-308, 374-382.)[1]  The

application was denied initially and upon reconsideration.  (R. 9, PageID #: 140-153, 154-165.)

On May 16, 2014, Witcher filed a written request for a hearing before an Administrative Law

Judge ("ALJ").  (R. 9, PageID #: 185.).  The ALJ held a hearing on March 2, 2016.  (R. 9,

PageID #: 106-139.)  Claimant and his mother appeared at the hearing, were represented by

counsel, and testified.  (*Id.* at 108, 112-126, 127-138.)  The ALJ issued a decision, on May 21,

2016, applying the Social Security Administration regulation's three-step sequential analysis and

determined that claimant, as a person under the age of 18, was not disabled.  (R. 9, PageID #: 83-

101.)  Witcher sought review of the ALJ's decision from the Appeals Council.  (R. 9, PageID #:

75.)  The Appeals Council denied the request for review, thus rendering the ALJ's decision the

final decision of the Commissioner.  (R. 9, PageID #: 53-55.)

Claimant and his mother now seek judicial review of the Commissioner's final decision

pursuant to 42 U.S.C. §§ 405(g) and 1383(c).  Claimant asserts that the ALJ erred by not finding

that he met Listing 112.05(D) and when evaluating the opinion evidence of record.  (R. 10,

PageID #: 749.)

## II.  PERSONAL BACKGROUND INFORMATION

Claimant was born on March 3, 2000, and was thirteen years old on his application date

September 12, 2013.  (R. 9, PageID #: 86, 305, 380.)  Accordingly, claimant was an adolescent

child on the application date, and he is currently an adolescent for Social Security purposes.  *See*

20 C.F.R. § 416.926a(g)(2)).

---

[1] Claimant's mother notes his behavior problems include "issues with students in his school and
... becoming very angry[;"]  he has "anger issues," and although he does not act out violently, she
is "concerned he may snap and hurt himself or another student."  (R. 9 PageID #: 378).

2

## III.  RELEVANT MEDICAL EVIDENCE[2]

Claimant, through his mother, applied for SSI on September 12, 2013, alleging that his disabling conditions were "mild mental retardation and anxiety."  (R. 9, PageID #: 375.) Claimant has had an individualized education plan ("IEP") since 2005.  (R. 9, PageID #: 324, 344-355, 486, 619.)  In May 2012, a team met for his three-year reevaluation.  *Id.* at 322-326. The team determined that claimant continued to qualify for special education services as a student with a cognitive disability, and that he would continue to receive speech services.  *Id.* at 343.

Claimant began receiving counseling at Children's Safe Harbor ("Harbor") on November 27, 2012, to address a history of disruptive behavior and anger management problems.  (R. 9, PageID #: 716-728.)  Wendy Ruthenberg, SW, and Ken (Richard) Miller, Psy, PCC-S conducted the initial assessment on December 3, 2012.  *Id.* at 486-494.  Their assessment noted below-average developmental milestones in understanding language (at 12-24 months), intellectual abilities, and coping skills.  *Id.* at 488.  Their diagnostic impressions, after conducting a mental status exam, were that claimant's intellect appeared below average and his speech was impaired. *Id.* at 491.  He appeared to meet diagnostic criteria for Disruptive Behavior Disorder, NOS; Learning Disorder, NOS; and further psychological testing was recommended to rule out PTSD or intellectual disabilities.  *Id.* at 491-492.  Claimant attended therapy sessions at Harbor with Jessica Hartle, P.C., and others, through 2015. (R. 9, PageID #: 495-508, 716-748.)

---

[2]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.  Disputed issues will be discussed as they arise in claimant's brief alleging error by the ALJ.

3

On August 30, 2013, clinical psychologist Jason J. Brouwer, Ph.D., assessed the results of recent psychological testing in a Confidential Psychological Testing Report.  (R. 9, PageID #: 478-483.)  Dr. Brouwer stated that his evaluation was intended to provide diagnostic clarification and treatment recommendations for claimant.  *Id.* at 478.[3]  Dr. Brouwer administered the Wechsler Intelligence Scale for Children ("WISC-IV") and the Wide Range Achievement Test ("WRAT4") for a cognitive assessment.  (R. 9, PageID #: 479.)  In the WISC-IV, claimant achieved a full scale IQ of 67, falling in the Extremely Low range as compared to his peers.  *Id.*  The Vineland Adaptive Behavior Scales ("Vineland-II") measures personal and social skills in four domains:  Communication, Daily Living Skills, Socialization, and Motor Skills.  *Id.*  His Vineland-II scores showed a low level of adaptive functioning.  *Id.* at 479-480.  Two other administered tests provided a behavioral/personality assessment.  (R. 9, PageID #: 480.)  Claimant's responses were consistent with someone for whom academic achievement does not come easily.  *Id.*

Dr. Brouwer's evaluation led to diagnoses of Generalized Anxiety Disorder and mild mental retardation.  (R. 9, PageID #: 481-482.)  His diagnosis of mild mental retardation was based, in part, on claimant's overall extremely low level of intellectual functioning and low level of adaptive functioning.  *Id.* at 481.  Claimant's symptoms indicated a diagnosis of Generalized Anxiety Disorder, which stemmed from fears of getting hurt, his health, and attending school; his worrying and inattention; and his physiological symptoms associated with anxiety.  *Id.*

---

[3] Claimant's mother expressed concern, describing that he was easily frustrated and quick to anger.  (R. 9, PageID # 478).  She wanted to determine whether cognitive delays, ADHD, or an emotional issue was interfering with claimant's ability to succeed behaviorally in the home and at school.  *Id.*

4

Dr. Brouwer's recommendations included a focus on language development and visual learning activities; developing concept formation skills, and the use of picture instructions and manipulatives.  (R. 9, PageID #: 481.)  The psychologist pointed out that claimant's academic performance was commensurate with his current measure of intellectual functioning.  *Id.*  He recommended that the claimant continue with individual counseling.  *Id.*

On October 14, 2013, a counselor at Harbor noted that claimant had been diagnosed with Disruptive Behavior Disorder, NOS; Learning Disorder, NOS; and Generalized Anxiety Disorder.  (R. 9, PageID #: 619.)  In addition, a counselor at Harbor reported on April 9, 2015, that claimant had made "some improvement" toward his goal of managing his anger at school. *Id.* at 532-533.

State agency consulting psychologist Daniel K. Watkins, Ph.D., performed a psychological evaluation of claimant on November 5, 2013.  (R. 9, PageID #: 513-518.)  The evaluation was based in part on claimant's self-report, and his mother's report, because the psychologist did not have any medical records to review.  *Id.* at 514.  Dr. Watkins stated claimant had been in outpatient treatment at Harbor for anger issues.  *Id.*  The claimant was not taking any psychiatric medications.  *Id.*  Dr. Watkins assessed that claimant's thought processes appeared coherent and goal directed.  (R. 9, PageID #: 515.)  Claimant's mood was generally euthymic, and no sleep problems were reported.  *Id.*  Dr. Watkins stated that claimant did not appear to be anxious at the evaluation, and neither the claimant nor his mother described any serious anxiety disorder.  *Id.*  He reported that "the mother appears possibly to exaggerate the significance of some of the claimant's difficulties, but I found no indication of outright malingering."  *Id.* at 517.

5

Dr. Watkins concluded that claimant "does not appear to be exhibiting any major mood disorder, anxiety disorder, thought disorder, primary behavior disorder, or psychosis." (R. 9, PageID #: 517.) Dr. Watkins assessed that, although he did not test claimant's intelligence,

> . . . based on his responses to the cognitive portion of the mental status exam, I would estimate that IQ might fall in the borderline or low average range. I doubt he is intellectually disabled (mentally retarded). Otherwise, no gross or obvious cognitive limitations are noted. Ability to sustain attention and concentration was adequate for purposes of evaluation, and appears to be adequate for the purposes of an ordinary school day.

Id. at 517. Dr. Watkins opined that claimant's functional abilities and limitations in acquiring and using information were "consistent with possible borderline or low average intellectual functioning." Id. In addition, regarding claimant's functional abilities and limitations in attending and completing tasks, Dr. Watkins opined that he found "no indication of any significant limitation in this area." Id. at 517-518.

On February 12, 2014, Aileen Hunt, a state-agency consultant speech therapist evaluated claimant's speech. (R. 9, PageID #: 521-523.) Hunt assessed claimant's speech intelligibility at 90%, and his articulation was considered to be within normal limits. Id. at 523. Hunt determined that claimant had a moderate stuttering disorder, with a good prognosis for improvement within two years with continued speech therapy. Id.

Claimant's high school report card, for the 2014-2015 school year, shows that he received mostly As and Bs, with a C in Reading, and a 3.21 G.P.A. (R. 9, PageID#: 413, 682.) In the Fall semester of the following 2015-16 school year (10th grade), claimant had all As and Bs, with a 3.3 G.P.A. Id. at 656.

On May 4, 2015, Cindy Marshall, Speech and Language Pathologist for the Toledo Public Schools system, evaluated claimant's speech and language as part of his May 2015 IEP

6

re-evaluation.  (R. 9, PageID #: 438, 693-694.)  Claimant's stuttering was assessed to be "in the very mild range."  *Id.*  Marshall recommended that claimant continue to receive speech and language services on a consultative basis, to maintain his then-current level of fluency.  *Id.* at 438-439.  At the March 2016 hearing, claimant testified that he no longer went to speech therapy, and that 2015 was the last year he needed to go to speech therapy.  *Id.* at 120.

Also in May 2015, a team met for claimant's three-year IEP reevaluation.  (R. 9, PageID #: 682-685, 692-699.)  The school psychologist Suzannah Q. Sohnly reviewed claimant's grades for the current school year (C in reading, A in Contemporary Foods, and Bs in his English, Health, Algebra, Physical Science and World Studies).  *Id.* at 682.  She noted that claimant had obtained a Reading score of 498 (Advanced) and a Math score of 455 (Accelerated) in the Ohio Achievement Assessments Alternative Assessment in the previous school year.  *Id.*  Psychologist Sohnly stated that the claimant continued to meet eligibility criteria, in his 2005, 2008, and 2012 IEP reevaluations, for special education services as a student with a Cognitive Disability due to deficits in cognition, academic achievement and adaptive behavior.  *Id.* at 683.  The psychologist indicated that claimant receives special education services through the IEP that focus on communication, reading and math.  *Id.*  Psychologist Sohnly noted that claimant's cognitive skills had been assessed with a Full Scale IQ of 67, in the extremely low range; he performed in the extremely low range when compared to peers.  Claimant exhibited average abilities with vocabulary and spelling skills.  (R. 9, PageID #: 684.)  Comprehension skills were slightly below average, and he exhibited relative weakness in math.  *Id.*  Claimant's adaptive behavior was rated significantly below average in 2005, but by 2012, with individual instruction in a self-contained classroom with similarly-accommodated peers, his adaptive behavior skills were rated in the

average range.  *Id.*  His special education teacher rated him in the moderately low range, compared to same age peers, with some difficulty in the areas of communication and daily living skills.  *Id.* at 685.  Sohnly concluded that claimant's educational needs included instruction at an individual level, which would be below grade level in reading and math, with information repeated, clarified, and broken down into smaller steps.  (R. 9, PageID #: 685.)  The claimant may need information presented in a variety of ways, including verbal information paired with visual cues.  *Id.*  He would require extra time on assignments, quizzes and tests, as well as one-on-one attention when necessary.  *Id.*

Claimant's special education teacher, George Grossman, assessed his academic skills, and stated that he was making above average progress in his studies.  (R. 9, PageID #: 692.)  He noted that claimant's reading scores had improved over the course of the year.  *Id.*  The teacher also stated that claimant's organizational skills were poor; he needs frequent redirection most days; and he works at a slower pace.  *Id.*  The teacher described claimant's educational needs included structure, one-on-one instruction and assistance.  *Id.*  Grossman stated that claimant "benefits from a modified curriculum with [an] emphasis on functional life skills, competitive employment and independent living."  *Id.*

The May 2015 IEP team determined, based on the collected information, that claimant continued to meet eligibility criteria for special education services as a student with an intellectual disability due to deficits in the areas of cognitive, academic, and adaptive behavioral skills.  (R. 9, PageID #: 698.)  Claimant's teachers indicated he made progress in the past year, but remained below average when compared to his peers, and that he benefits from specially

8

designed instruction and accommodations.  *Id.*  The team also recommended that he continue receiving speech and language therapy services within the school on a consultation basis.  *Id.*

In October 2015, claimant and his mother returned to Harbor for an assessment and "continued assistance with issues relating to his anger and disruptive behavior."  (R. 9, PageID #: 720; *see also* 726.)  The counselor indicated that claimant had been diagnosed with generalized anxiety disorder and mild intellectual disability.  *Id.* at 721, 726.  His developmental milestones were below average for intellectual abilities and coping skills.  *Id.* at 723.  The counselor assessed claimant as alert and oriented in the mental status exam, with logical thought content within normal limits, although intellect was below average.  *Id.* at 726.  The claimant's speech was assessed as "normal articulation."  *Id.*  At a November 5, 2015, follow-up, the counselor indicated that claimant had made "some improvement" toward his goal of reducing frustration and improving his coping skills.  *Id.* at 729-730.

In December 2015, three of the claimant's teachers filled out questionnaires concerning his functioning.  Claimant's English teacher's response indicates that she has known the claimant for two years, and taught him for one period, five days a week.  (R. 9, PageID #: 448.)  She rated him at "4" out of 5 ("a serious problem") in the area of applying problem-solving skills in class discussions, which is in the domain of acquiring and using information.  The teacher rated him "3" ("an obvious problem") in the areas of reading and comprehending written material, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, expressing ideas in written form, learning new material, and recalling and applying previously learned material.  *Id.* at 449.  No activities in this domain were rated "5" ("very serious problem").

In the domain of attending and completing tasks, this teacher rated claimant as having slight or no problems in most of the activities.  (R. 9, PageID #: 450.)  She rated claimant at "3" ("obvious problem") in only two activities, carrying out multi-step instructions, and organizing his own things and school materials.  *Id.*  No activities in this domain were rated "4" ("serious problem") or "5" ("very serious problem").  *Id.*

Claimant's special education teacher also filled out a questionnaire on December 1, 2015.  (R. 9, PageID #: 457-464.)  The teacher indicates he has known claimant for fourteen months, and taught him several subjects daily.  *Id.* at 457.  The questionnaire included an assessment in the domain of acquiring and using information.  He rated claimant at "3" out of 5 ("an obvious problem") in the areas of reading and comprehending written material, comprehending and doing math problems, providing organized oral explanations and adequate descriptions, expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions.  *Id.* at 458.  The remaining activities were assessed to be a slight problem for claimant.  *Id.*  No activities in this domain were rated "4" or "5" (serious or very serious problem).  *Id.*

The special education teacher also assessed claimant in the domain of attending and completing tasks.  He assessed claimant had a serious problem ("4") in organizing his own things and school materials.  (R. 9, PageID #: 459.)  He assessed claimant with an obvious problem ("3") in the activities of focusing long enough to finish an assigned activity or task, refocusing to task when necessary, carrying out multi-step instructions, completing class or homework assignments, and working at a reasonable pace and finishing on time.  *Id.*  He rated the remaining activities as a slight problem ("2") for claimant.  *Id.*  The teacher noted that claimant needs

10

frequent redirection and assistance in completing and organizing his assignments. *Id.* at 458-459. No activities in this domain were rated "5" (very serious problem). *Id.*

Claimant's "Managing Transitions Teacher" filled out the questionnaire on December 3, 2015. (R. 9, PageID #: 466-473.) The teacher indicated she had known claimant for three months, and saw him for one period each school day for "managing transitions." *Id.* at 466. In the domain of acquiring and using information, she rated claimant at "4" (serious problem) in the activities of reading and comprehending written material, expressing ideas in written form, and applying problem-solving skills in class discussions. *Id.* at 467. This teacher rated claimant at "3" ("an obvious problem") in the areas of understanding school and content vocabulary, comprehending and doing math problems, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, learning new material, and recalling and applying previously learned material. *Id.* The teacher marked that claimant had a slight problem comprehending oral instructions. *Id.* She noted that claimant received extra assistance with all assignments. *Id.* No activities in this domain were rated "5" (very serious problem). *Id.*

The transitions teacher stated claimant had a serious problem ("4") in the activity of working at a reasonable pace and finishing on time, within the domain of attending and completing tasks. (R. 9, PageID #: 468.) She assessed claimant as having an obvious problem ("3") in the activities of sustaining attention during play or sports activities, carrying out multi-step instructions, organizing his own things or school materials, completing class or homework assignments, and completing work without careless mistakes. *Id.* The remaining activities were

11

assessed to be a slight or no problem for claimant.  *Id.*  No activities in this domain were rated

"5" (very serious problem).  *Id.*

## IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in the March 21,

2016, decision:

> 1.  The claimant was born on March 3, 2000.  Therefore, he was an adolescent on September 12, 2013, the date the application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.924(b) and 416.972).
>
> 3.  The claimant has the following severe impairments: subaverage intellectual functioning without deficits in adaptive functioning (20 CFR 416.924(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925, and 416.926).
>
> 5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).
>
> 6.  The claimant has not been disabled, as defined in the Social Security Act, since September 12, 2013, the date the application was filed (20 CFR 416.924(a)).

(R. 9, PageID #: 86, 87, 100.)

In finding that claimant was not disabled, the ALJ determined that claimant has less than

marked limitation in acquiring and using information (R. 9, PageID #: 95), attending and

completing tasks (*id.* at 96-97), interacting and relating with others (*id.* at 97-98), and in caring

for himself (*id.* at 99-100).  The ALJ found that claimant has no limitation in moving about and

manipulating objects (*id.* at 98) and in health and physical well-being (*id.* at 100).  The ALJ,

therefore, found that claimant does not have an impairment, or combination of impairments,

which result in either "marked" limitations in two domains of functioning, or "extreme"

limitation in one domain of functioning.  (R. 9, PageID #: 100.)

## V.  DISABILITY STANDARD

A child claimant, under the age of 18, is entitled to receive SSI benefits only when the

claimant establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§

423, 1381.  As in any Social Security disability case, the claimant bears the ultimate burden of

proof of disability.  20 C.F.R. § 416.912(a); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

Social Security Administration regulations require an ALJ to follow a three-step sequential

analysis to determine whether a person under the age of 18 is disabled.  *See* 20 C.F.R. §

416.924(a); *see, e.g.*, *Thomas ex rel. T.E. v. Commissioner*, No. 1:14CV0284, 2015 WL

1456447, at *4 (N.D. Ohio Mar. 30, 2015); *Maupin v. Commissioner*, No. C-1-07-74, 2008 WL

687123, at *2 (S.D. Ohio Mar. 10, 2008); *Smith ex rel. Enge v. Massanari*, 139 F. Supp. 2d

1128, 1132 (C.D. Cal. 2001).

First, the ALJ determines whether the minor-claimant is engaging in substantial gainful

activity ("SGA").  If the claimant is engaging in SGA, he is not disabled, regardless of his

medical condition, age, education, or work experience.  If the claimant is not engaging in SGA,

the analysis proceeds to step two.  20 C.F.R. §§ 416.924(b); 416.972.  Second, the ALJ must

determine whether the minor-claimant has a medically determinable impairment, or a

combination of impairments, that is "severe."  A medically determinable impairment, or a

combination of impairments, is not "severe" if it is a slight abnormality, or a combination of

slight abnormalities, that causes no more than minimal functional limitations.  If the claimant

does not have a severe impairment, he is not disabled.  If he does, the analysis proceeds to the

13

third step.  20 C.F.R. §§ 416.924(a), (c).  Third, the ALJ must determine whether the claimant

has an impairment, or combination of impairments, that meets or medically equals the severity of

a listing, or that functionally equals the listings.  In doing so, the ALJ must consider the

combined effect of all medically determinable impairments, including those that are not severe.

If the claimant has an impairment, or combination of impairments, that meets or medically

equals the severity of a listing, or that functionally equals the listings, and it has lasted or is

expected to last for a continuous period of at least 12 months, then he is presumed to be disabled.

If not, the claimant is not disabled.  20 C.F.R. §§ 416.923, 416.924(d), 416.924a(b)(4), and

416.926a(a) and (c).

In determining whether an impairment or combination of impairments functionally equals

a listing, the ALJ must assess the claimant's functioning in six areas ("domains"):  (1) acquiring

and using information, (2) attending and completing tasks, (3) interacting and relating with

others, (4) moving about and manipulating objects, (5) caring for one's self, and (6) health and

physical well-being.  The ALJ, in making this assessment, must compare how appropriately,

effectively and independently the claimant performs activities compared to the performance of

other children of the same age who do not have impairments.  To functionally equal the listings,

the claimant's impairment(s) must result in "marked" limitations in two domains of functioning

or an "extreme" limitation in one domain.  20 C.F.R. §§ 416.926a(b)(1) and (d).

The ALJ, in assessing whether the claimant has "marked" or "extreme" limitations, must

consider the functional limitations from all medically determinable impairments, including any

impairments that are not severe (20 C.F.R. § 416.926a(a)).  Consideration must also be given to

the interactive and cumulative effects of the claimant's impairment(s) in any affected domain (20

14

C.F.R. § 416.926a(c)). A child has a "marked" limitation in a domain when his impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). A child has an "extreme" limitation in a domain when his impairment(s) interferes "very seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3). A child's day-to-day functioning may be seriously, or very seriously, limited even if the impairment(s) limit only one activity, or when the interactive and cumulative effect of the impairment(s) limit several activities.

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try

15

the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston v. Commissioner*, 245 F.3d 528, 535 (6th Cir. 2001).).

## VII.  ANALYSIS

Claimant, through his mother, asserts that the ALJ erred: (1) by not finding claimant met Listing 112.05(D), and (2) when evaluating the opinion evidence of record and concluding that claimant's impairments did not functionally equal the Listing.  (R. 10, PageID #: 749.)

### A.  Listing 112.05(D).

To satisfy this Listing, a claimant must show: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning; (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3) another physical or mental impairment imposing an additional and significant limitation of function.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.05(D); *Barnett ex rel. D.B. v. Commissioner*, No. 13-4391, 2014 WL 3585892, at *1 (6th Cir. July 22, 2014); *Peterson*, 2014 WL 223655, at *6 (citing *Zebley*, 493 U.S. at 530-532); *see also* 20 C.F.R. § 404.1525(c)(3) (impairment meets a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction).  Listing 112.05(D) provides in relevant part:

> Intellectual Disability: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning. ***

16

> D.  A valid verbal, performance, or full scale IQ of 60 through 70
> and a physical or other mental impairment imposing an additional
> and significant limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.05(D) (2016).[4]  A claimant satisfies the listing

only if he satisfies the diagnostic description in the introductory paragraph and all the elements

of any one of the relevant criteria.  *See, e.g.*, *Peterson v. Commissioner*, No. 13-5841, 2014 WL

223655, at *6 (6th Cir. Jan. 21, 2014); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  An

impairment that satisfies only some of the relevant listing criteria does not qualify, regardless of

its severity.  *Peterson*, 2014 WL 223655, at *6 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530

(1990)).

The court considers the ALJ's decision—after setting aside the decision's language that

establishes claimant does not meet the requirements for Listings 112.05 (A), (B), (C), (E), or (F)[5]

—because the claimant challenges only the ALJ's decision regarding Listing 112.05(D) (R. 10,

PageID #: 749, 758-764.).  The ALJ's decision determined that claimant had subaverage

intellectual functioning without deficits in adaptive functioning.  (R. 9, PageID #: 86.)  The

ALJ's indicated:

> The claimant's subaverage intellectual functioning does not meet the criteria for
> Listing 112.05.  To satisfy the Listing of 112.05, the claimant must have
> significantly subaverage intellectual functioning with deficits in adaptive
> functioning that meets or satisfies the requirements in 112.05 ... (D)....
>
> * * * * *

---

[4] This is the text of the relevant regulation at the time of the ALJ's March 21, 2016, decision.

[5] The ALJ's decision addressed each sub-paragraph in Listing 112.05(A)-(F), including those
applicable to older infants and toddler, in addition to those applicable to adolescents such as
claimant.  *See generally* R. 9, PageID #: 86-87.

17

> The claimant . . . does not have a valid verbal, performance, or full scale IQ of 60 through 70 with a physical or another mental impairment imposing an additional and significant limitation of function.

(R. 9, PageID #: 86-87.)  The ALJ assessed that claimant had non-severe impairments of speech and language disorder, and anxiety, which did not impose more than a minimal limitation on his ability to engage in functional activities.  *Id.*[6]  Moreover, the ALJ noted that no acceptable medical source mentioned findings, individually or in combination, equivalent in severity to the criteria of any listed impairment.  (R. 9, PageID #: 86-87.)  The ALJ concluded that the medical evidence did not demonstrate that claimant's impairments rose to a Listing-level severity.  *Id.*

Claimant contends that the ALJ's evaluation of Listing 112.05(D) was "patently inadequate," and asserts claimant should have been found to meet the Listing.  (R. 10, PageID #: 758-764.)  Moreover, he claims the ALJ did not compare the record evidence to the Listing, which claimant argues was harmful error.  *Id.* at 760.  But the Commissioner refutes claimant's characterization and argues that the ALJ's decision must be read as a whole.  When considering the entire decision, it is apparent that the remainder of the ALJ's decision, following ALJ's above-quoted conclusion, further explained why claimant did not have an impairment or combination of impairments that meets, medically equals or functionally equals one of the listed impairments.  *Id.* at 86-100.

---

[6] In addition, the ALJ cross-referenced Listing 112.02(B)(2), indicating with respect to the "Paragraph B" criteria, the objective medical evidence showed less than marked limitations in the following: age-appropriate cognitive/communicative function; age-appropriate social functioning; age-appropriate personal functioning; and maintaining concentration, persistence or pace (secondary to borderline intellectual functioning, anxiety, and speech and language delays). *Id*. at 87.

18

The fundamental issue before this court is whether there is substantial evidence supporting the ALJ's decision.  It is axiomatic that an impairment, regardless of its severity, does not satisfy the Listing's requirements if it satisfies only some of the relevant Listing criteria. *Peterson*, 2014 WL 223655, at *6 (citing *Sullivan*, 493 U.S. at 530).  Thus, if the ALJ's decision on the failure to meet any one of the Listing's criteria is supported by substantial evidence, then the decision on the Listing must be upheld.

Although the claimant argues he satisfied all three criteria, the Commissioner's brief focuses its argument on the substantial evidence supporting the ALJ's decision regarding the third element.[7]  Claimant asserts that his speech and language disorder satisfied that criteria.

### B. Speech and Language Disorder

The claimant has the burden to demonstrate that he satisfied the third criteria—"a physical or mental impairment imposing an additional and significant limitation of function"—in order to meet Listing 112.05(D).  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.05(D); *Barnett*, 2014 WL 3585892, at *1; *Peterson*, 2014 WL 223655, at *6.  The degree of functional limitation the additional impairment imposes is assessed to determine if it causes more than minimal functional limitations, i.e., if it is a "severe" impairment, as defined in 20 C.F.R. § 416.924(c).  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.00(A) (Introduction).  Section 416.924(c) provides:

> You must have a medically determinable impairment(s) that is severe.  If you do not have a medically determinable impairment, or your impairment(s) is a slight

---

[7] The Commissioner indicates that although the ALJ "also [found] that Plaintiff had no deficits in adaptive functioning, that issue need not be reached as Plaintiff did not have an additional severe impairment."  (R. 11, PageID # 779).  The court agrees, because as set forth herein, the ALJ's decision—that claimant did not have another "physical or another mental impairment imposing an additional and significant limitation of function"—is supported by substantial evidence.

abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, we will find that you do not have a severe impairment(s) and are, therefore, not disabled.

20 C.F.R. § 416.924(c).

The ALJ found that claimant's speech and language disorder is a non-severe impairment. (R. 9, PageID #: 86.)  "An impairment that is 'non-severe' must be a slight abnormality that causes no more than minimal limitations in each of the domains of functioning."  *Id.*  After recognizing that claimant had been diagnosed with a speech and language disorder,[8] the ALJ stated:

> However, the claimant's treating physicians have not imposed any limitations on him in regards to engaging in activities because of this impairment.  Since these impairments do not impose more than a minimal limitation on the claimant's ability to engage in functional activities, the undersigned finds that they are non-severe.

*Id.; see generally* 20 C.F.R. § 416.924(c) ("no more than minimal functional limitations").

The Commissioner asserts that substantial evidence supports the conclusion that claimant did not satisfy the Listing because he did not meet his burden to show he had another severe impairment.  (R. 11, PageID #: 783.)  The claimant responds that he has met the criteria, relying upon the opinions from consultative speech-language pathologist Hunt.  SLP Hunt assessed claimant with a moderate to severe delay in receptive and expressive language skills, and a moderate stuttering disorder.  (R. 10, PageID #: 760, citing R. 9, PageID #: 522-523.)  Hunt also opined that claimant "demonstrated particular difficulty with organizing and verbally expressing his ideas."  (R. 9, PageID #: 523.)

---

[8]  The ALJ also noted claimant's generalized anxiety diagnosis, but claimant has not argued that it satisfies Listing 112.05(D)'s third criteria.

SLP Hunt's examination, however, concluded that claimant's articulation was within normal limits.  (R. 9, PageID # 93).  The SLP opined that claimant's prognosis for improvement was "good given continued speech therapy with continued academic supports."  *Id.* at 523.  In addition, SLP Hunt stated that the claimant "has 90% intelligibility ratings for known context in conversation, unknown context in conversation, and intelligibility in conversation with request." *Id.*  The ALJ gave "great weight" to SLP Hunt's opinion, and further determined that Hunt's opinion was generally consistent with claimant's school records and "with the opinions of the consultative speech and language pathologists employed by the state agency . . . who opined that the claimant has only less than marked limitations in interactions and relations with others due to delays in language development."  *Id.* at 93.

In addition, state agency reviewing speech-language pathologist, Melissa Hall, M.A., CCC/SLP, reviewed claimant's medical records.  (R. 9, PageID #: 147-149).  Although an ALJ's decision is not required to discuss every piece of evidence in the record, claimant cites *Thompson v. Commissioner*, No. 1:12CV2372, 2014 WL 356974, at *4 (N.D. Ohio Jan. 31, 2014) and argues it must explain why the ALJ did not include a medical source's limitation that contradicted the ALJ's decision.  Indeed, state agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence.  20 C.F.R. §§ 416.913a(b)(1); 416.927(e).  ALJs are not automatically bound by such opinions, but they "may not ignore [them] and must explain the weight given to the opinions in their decisions." *Edwards ex rel. L.T. v. Colvin*, No. 12-C-7639, 2013 U.S. Dist. LEXIS 106104, 2013 WL 3934228, at *4 (N.D. Ill. July 30, 2013) (quoting SSR 96-6p, 1996 SSR LEXIS 3); *see also Johnson v. Astrue*, No. 1:09CV2959, 2010 U.S. Dist. LEXIS 137362, 2010 WL 5559542, at *5

21

(N.D. Ohio Dec. 3, 2010) (same).  Where there are conflicting opinions resulting from essentially the same medical data, it is the responsibility of the ALJ to resolve those conflicts. *Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see generally Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004) (ALJ's responsibility to evaluate medical evidence and claimant's testimony to assess RFC).

In the domain of acquiring and using information, SLP Hall noted that claimant's receptive and expressive language scores were below the mean, and indicated that language was "marked."  *Id.* at 147.  In the domain of interacting and relating with others, SLP Hall indicated that claimant did not exhibit any errors, and speech is no limitation.  *Id.* at 148.  On reconsideration, Lisa Lynch, M.A., CCC/SLP, concurred in those findings.  *Id.* at 160-161.  The ALJ gave "partial weight" to SLPs opinions, noting they were "entirely consistent with the opinion of Ms. Hunt" as to claimant's history of moderate to severe delays in receptive and expressive language skills, "but he maintained… intelligibility ratings of 90% for known context in conversation, unknown context in conversation, and intelligibility in conversation with request."  *Id.* at 94.

The claimant argues that the ALJ's decision failed to explain the reasoning for not accepting the marked language problem opined by the reviewing SLP consultants.  (R. 10, PageID #: 761.)  Reading the ALJ's opinion as a whole, however, demonstrates that the ALJ considered Hall's (and Lynch's) opinions and gave them partial weight to the extent they were consistent with Hunt's opinion and the record.  In addition, the ALJ discounted the opinions from other consulting providers who, like the SLPs, found a marked limitation in acquiring and using information because that limit was inconsistent with the records from the Toledo Public

22

School system, which show that the claimant has only moderate limitations in acquiring and using information. *Id.* at 94; *see also* 449, 458, 467. Moreover, elsewhere in the the ALJ's decision, he found, for example, that claimant received passing grades in all subjects in 2014 and 2015 and maintained a grade point average of 3.250, with accommodations; he competed on the varsity soccer team; made "above average progress in his studies" despite his limitations; achieved "A's" and "B's" in 2015 in all subjects but Reading, where he received a "C" despite accommodations; and claimant testified he has been recognized for his hard work in school and while doing volunteer work; claimant enjoys reading, playing games, and does volunteer work without difficulties; and he demonstrated "a high level of job performance" in the Stepping Out work program at school. ((R. 9, PageID #: 95-97.) In addition, the ALJ considered that testing in 2015 found claimant to "have only a 'very mild stutter'". *Id.* at 89.

The court further notes that speech therapist Hunt's February 2014 prognosis that claimant's speech would improve within two years with continued speech therapy (R. 9, PageID #: 523) was prescient. By May 2015, Cindy Marshall, Speech and Language Pathologist for the Toledo Public Schools system, assessed claimant's stuttering as "very mild" (*id.* at 438). And claimant himself testified, at the March 2016 hearing, that he no longer went to speech therapy (*id.* at 120).

Claimant's argument to the court is tantamount to an invitation for this court to reweigh the evidence and to specifically find that the ALJ should have come to a different conclusion. This court's role in considering a social security appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11

23

(E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), report and recommendation adopted, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017).  Although claimant challenges the ALJ's articulation of the decision, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result."  *White v. Comm'r of Soc. Sec. Admin.*, 970 F. Supp. 2d 733, 741 (N.D. Ohio 2013) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-508 (6th Cir. 2006); *Moscorelli v. Colvin*, No. 1:15-CV-1509, 2016 WL 4486851, at *4 (N.D. Ohio Aug. 26, 2016).  The ALJ's determination that claimant's speech and language disorder is non-severe because it does not impose more than a minimal limitation on the claimant's ability to engage in functional activities is supported by substantial evidence.

### C.  Opinion Evidence Concerning Domains

A claimant may still qualify for benefits if his impairments "functionally equal" the disabilities in the listings.  *Barnett*, 2014 WL 3585892, at *3.  Claimant contends that the ALJ erred when determining that he has less than marked limitation in acquiring and using information (R. 9, PageID #: 95), and in attending and completing tasks (*id.* at 96-97).  (R. 10, PageID #: 749, 764-772.)  Rather, claimant asserts that the evidence demonstrates marked limitations in these domains.  *Id.*

### 1.  Acquiring and Using Information

The domain of "acquiring and using information" considers:

. . . how well you acquire or learn information, and how well you use the information you have learned.

20 C.F.R. § 416.926a(g).  For example, an adolescent should be able to continue to demonstrate what he has learned in academic assignments.  20 C.F.R. § 416.926a(g)(2)(v).  The adolescent should be able to use what he has learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation).  *Id.*  He should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas).  *Id.*  He should also learn to apply these skills in practical ways that will help enter the workplace after finishing school (carrying out instructions, preparing a job application, or being interviewed by a potential employer).  *Id.*

As claimant points out, "[p]erhaps the most important evidence the SSA 'will' consider in determining the severity of a child's 'functional limitations' are school records, including standardized tests and statements from teachers.'"  (R. 10, PageID #: 765, quoting *Coplen v. Social Sec. Admin.*, No. 3:08-0956, 2010 WL 1526108, at *6-*7 (M.D. Tenn. Mar. 23, 2010), *adopted by* 2010 WL 1525725 (M.D. Tenn. Apr. 15, 2010) (quoting *Turner v. Barnhart*, 377 F.Supp.2d 1165, 1167 (M.D. Ala. 2005)).  *See generally Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 178 (N.D. N.Y. 2010) (ALJ must consider all relevant evidence of functioning, including information from child's teachers); 20 C.F.R. § 416.924a(a)(2)(iii), (b)(7)(ii).

In finding that claimant has less than marked limitation in acquiring and using information, the ALJ addressed the domain as follows:

> At the hearing and in the child disability reports, the claimant's mother alleged that he has significant limitations in learning new material, acquiring information, and using learned material in a classroom setting due to severe intellectual disabilities.  Records from the Toledo Public School system show that claimant was placed on an IEP due to deficiencies in the academic environment and

25

because psychological testing showed that he maintained a full-scale IQ score of 67, placing him in the borderline intellectual range of functioning. Records from Harbor show that the claimant was found to have some delays in cognitive function. However, this is contrasted by the claimant's report cards, which show that he maintains a grade point average of 3.250, with accommodations. Furthermore, this is contrasted by reports directly from the claimant that he enjoys reading, playing games, and does volunteer work without difficulties; and the reports that he demonstrated "a high level of job performance" in the Stepping Out work program at school. Therefore, based upon the foregoing, the undersigned finds that the claimant has less than marked limitations in acquiring and using information.

(R. 9, PageID #: 95 (internal citations omitted).) The ALJ noted as well that claimant's school records show that the claimant has only moderate limitations in acquiring and using information. (R. 9, PageID #: 94.) The aforementioned December 2015 teacher questionnaires concerning his functioning also support a finding of less than marked. *Id.* at 449, 458, 467.[9]

The claimant asserts the ALJ erred by "selectively picking and choosing evidence." (R. 10, PageID #: 764-765.) The Sixth Circuit has pointed out that "the same process can be described more neutrally as weighing the evidence." *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009). Although the claimant provides evidence which could support a different

---

[9] Claimant also argues that the ALJ erred when considering reports from his school teachers. The ALJ considered the three reports (*see* R. 9, PageID # 89-91) and credited them "partial weight," because although "insightful and descriptive of the claimant's mental status and behaviors" the ALJ found that "none of the claimant's teachers are qualified health care professionals, and presumptively lack the requisite knowledge and/or training required to adequately diagnose or assess the effects of any ongoing physical or mental limitations." *Id.* (citing SSR 06-03p). Because such teachers are considered "other sources," whose opinions are not entitled to controlling weight or any special deference, the ALJ had broad discretion when considering their opinions. *See Brown v. Commissioner of Soc. Sec.*, 591 Fed App'x 449, 451 (6th Cir. 2015); *Hill v. Commissioner of Soc. Sec.*, 560 Fed. App'x 547, 550 (6th Cir. 2014), 20 C.F.R. § 416.913(d)(3) (2016). The ALJ considered their opinions before assigning them partial weight, which is reflected in the decision and is sufficient based upon the record before this court. (R. 9, PageID # 89-91). In addition, the ALJ indicated he further considered their opinions when assessing the functional limitations in each domain. *Id.* at 91.

26

finding, the relevant question is not whether there is evidence to support a ruling different than that reached by the ALJ.  *Lebro ex rel. R.L. v. Commissioner*, No. 1:13CV1355, 2014 WL 3749221, at *11 (N.D. Ohio July 29, 2014).  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether some evidence might support another conclusion.  *Kidd v. Commissioner*, No. 99-6481, 2001 WL 345787, at *3 (6th Cir. Mar. 27, 2001); *Mullen*, 800 F.2d at 545.  Here, the ALJ's decision demonstrates that the ALJ sufficiently considered the evidence of record (*see generally* R. 9, PageID #: 87-94) and explained the decision concerning the domain of acquiring and using information.[10]  The claimant's argument that the ALJ erred in concluding that he has less than marked limitations in that domain is without merit.

## 2.  Attending and Completing Tasks

The domain of "attending and completing tasks" considers:

> . . . how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them.

20 C.F.R. § 416.926a(h); SSR 09-4p; *Deleon ex rel. J.D. v. Commissioner*, No. 1:12CV1149, 2013 WL 3865106, at *10 (N.D. Ohio July 24, 2013).  For example, an adolescent should be able to pay attention to increasingly longer presentations and discussions, maintain concentration while reading textbooks, and independently plan and complete long-range academic projects. 20 C.F.R. § 416.926a(h)(2)(v); SSR 09-4p.  The adolescent should be able to organize his materials and to plan his time in order to complete school tasks and assignments.  *Id.*  In anticipation of entering the workplace, he should be able to maintain his attention on a task for extended periods

---

[10]

of time, and not be unduly distracted by his peers or unduly distracting to them in a school

setting.  *Id.*

The ALJ determined that claimant has less than marked limitation in attending and

completing tasks.  Claimant argues that the evidence taken as a whole supports a marked

limitation in this domain, contends that substantial evidence does not support the ALJ's

determination, and further highlights evidence to support a contrary conclusion.  (R. 10, PageID

#: 770-772).  The ALJ addressed the domain as follows:

> At the hearing and in the child disability reports, the claimant's mother alleged
> that he has significant limitations in attending and completing tasks due to severe
> intellectual disabilities.  Specifically, Ms. Witcher stated that the claimant
> required frequent reminders to complete tasks, often left tasks incomplete, and
> required constant supervision to complete chores.  The records from the Toledo
> Public School system indicate that the claimant was found to be a poor candidate
> for a "typical" classroom setting, and he was placed in special education services
> due to deficiencies in completion of assignments and poor organization of his
> materials.  The claimant was also placed on an IEP in May 2012 due to
> difficulties with completion of work in the classroom setting.  The claimant's
> teacher questionnaires also show that the claimant required occasional redirection
> while working and additional time to complete tasks during assignments.
> Although academic records reflect that the claimant was assessed with a number
> of historical difficulties secondary to his intellectual impairments, the undersigned
> notes that his progress reports from 2014 and 2015 show that he received passing
> grades in all subjects and maintained a grade point average of 3.250, with
> accommodations.  Furthermore, the records from the Toledo Public School
> system show that the claimant has been able to compete on the varsity soccer
> team, and made "above average progress in his studies" despite his limitations.
> The undersigned specifically notes that the educational records from 2015 show
> that the claimant has made significant progress towards his academic goals,
> achieving "A's" and "B's" in all subjects but Reading, where he received a "C"
> despite the accommodations.  The claimant also testified at the hearing that he has
> been recognized for his hard work in school and while doing volunteer work.
> Furthermore, this is contrasted by reports directly from the claimant that he enjoys
> reading, playing games, and does volunteer work without difficulties; and the
> reports that he demonstrated "a high level of job performance" in the Stepping
> Out work program at school.  Therefore, based upon the foregoing, the
> undersigned finds that the claimant has less than marked limitations in attending
> and completing tasks.

28

(R. 9, PageID #: 96-97 (internal citations omitted).)  In addition, claimant's school records show that he has only moderate limitations in attending and completing tasks.  The December 2015 teacher questionnaires concerning his functioning support a finding of less than marked.  (R. 9, PageID #: 450, 459, 468).

The relevant question is not whether there is evidence to support a ruling different than that reached by the ALJ.  *Lebro*, 2014 WL 3749221, at *11.  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether some evidence might support another conclusion.  *Kidd*, 2001 WL 345787, at *3; *Mullen*, 800 F.2d at 545.  Here again, the ALJ's decision demonstrates that the ALJ sufficiently considered the evidence of record (*see generally* R. 9, PageID #: 87-94) and explained the decision concerning this attending and completing tasks domain.  The claimant's argument that the ALJ erred in concluding that he has less than marked limitations in the attending and completing tasks domain is without merit.  *See, e.g.*, *Deleon*, 2013 WL 3865106, at *10.

## VIII.  CONCLUSION

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence, and recommends that it be affirmed.


Date:  <u>July 27, 2018</u>                                    <u>s/ David A. Ruiz</u>
                                                               David A. Ruiz
                                                               United States Magistrate Judge

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).