IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Sevia Witcher, *on behalf of* S.T.D.,   Case No. 3:17CV1150

      Plaintiff,

   v.   **ORDER**


Commissioner of Social Security,


      Defendant.


      In this Social Security case, plaintiff Sevia Witcher challenges the Commissioner's decision denying her application for supplemental security income benefits on behalf of her son, S.T.D.

      An administrative law judge (ALJ) denied Witcher's claim after concluding that her son was not disabled. Specifically, the ALJ found that, although S.T.D. has "subaverage intellectual functioning," he does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 40 C.F.R. Pt. 404 Subpt. P., App. 1, nor does he have an impairment or combination of impairments that functionally equals the severity of the listings. (R. 9, ID 86-87, 100 (citing 20 C.F.R. §§ 416.924, 416.925, 416.926)).

Following briefing on the merits, Magistrate Judge David. A. Ruiz issued a Report and Recommendation (R&R) recommending I affirm the Commissioner's decision. (Doc. 13).

Plaintiff objects to the R&R on two grounds.

First, Witcher complains that Magistrate Judge Ruiz "did not discuss" the ALJ's "completely false" statement that S.T.D. "does not have an IQ between 60 and 70" points, despite evidence of test results within this range. (Doc. 14, ID 823-24). Second, she disputes the Magistrate Judge's conclusion that the ALJ's non-impairment findings were supported by substantial evidence. (*Id.* at 825). Neither argument is persuasive.

Regarding the first, plaintiff selectively misquotes the ALJ.

The ALJ did not conclude that S.T.D. did not have an IQ between 60 and 70. Rather, he concluded that S.T.D. "does not have a valid verbal, performance, or full scale IQ of 60 through 70 *with a physical or other mental impairment imposing an additional and significant limitation of function*," as required to satisfy the criteria in Listing 112.05(D) of the regulation, *supra*. (R. 9, ID 86-87 (emphasis added)). It is the latter, italicized phrase that made the difference in the ALJ's non-disability finding.

"Listing 112.05(D) has four requirements." *Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 F. App'x 461, 462 (6th Cir. 2014). "Two appear in Listing 112.05's introductory clause: 'significantly subaverage general intellectual functioning' with 'deficits in adaptive functioning.'" *Id.* at 463 (quoting 40 C.F.R. Pt. 404 Subpt. P., App. 1, § 112.05). "The other two appear in section D itself: an IQ score between 60 and 70 and 'a physical or other mental impairment imposing an additional and significant limitation or function.'" *Id.* (quoting § 112.05(D), *supra*).

2

A claimant must meet "*all* of a listing's specified medical criteria" to be considered disabled under its terms. *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (brackets omitted)). "An impairment that satisfies only some of the relevant listing criteria does not qualify, regardless of its severity." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014).

That means to qualify for benefits, S.T.D. must have: 1) significantly subaverage general intellectual functioning; with 2) deficits in adaptive functioning; 3) a valid verbal, performance, or full scale IQ of 60 through 70; and 4) a physical or mental impairment imposing an additional and significant limitation of function. 40 C.F.R. Pt. 404 Subpt. P., App. 1 § 1205(D). As the Commissioner explains, S.T.D. did not satisfy the criteria "despite his IQ of 67," because "he did not have another severe impairment." (Doc. 11, ID 779).

Regarding her second argument, plaintiff contends the ALJ failed to address certain evidence in finding that S.T.D. did not have an impairment, or combination of impairments that meets, medically equals or functionally equals one of the listed impairments in Listing 112.05(D). This claim relates to S.T.D.'s speech-language deficiencies.

Witcher notes that speech-language pathologist (SLP) Aileen Hunt assessed S.T.D. as having a moderate to severe delay in receptive and expressive language skills, as well as a moderate stutter. She overlooks, however, Hunt's other, more positive findings–along with the fact that the ALJ considered both the positive, and the negative, aspects of Hunt's evaluation in determining whether S.T.D. was disabled.

As the Magistrate Judge explained:

SLP Hunt's examination, however, concluded that claimant's articulation was within normal limits. The SLP opined that claimant's prognosis for improvement was 'good given continued speech therapy with continued academic supports.' In addition, SLP Hunt stated that the claimant 'has 90% intelligibility ratings for

> known context in conversation, unknown context in conversation, an intelligibility in conversation with request.' The ALJ gave 'great weight' to SLP Hunt's opinion, and . . . determined [it] was generally consent with claimant's school records and 'with the opinions of the consultative speech and language pathologists employed by the state agency . . . who opined that the claimant has only less than marked limitations in interactions and relations with others due to delays in language development.'

(R. 13, ID 813 (record citations omitted)).

Plaintiff also cites evaluations by two other non-examining SLPs who rendered opinions after reviewing S.T.D.'s medical records.

But again, the ALJ considered this evidence, and the Magistrate Judge considered his consideration of it: "The ALJ gave 'partial weight' to the SLPs opinions, noting that they were 'entirely consistent with the opinion of Ms. Hunt' as to claimant's history of moderate to severe delays in expressive language skills, 'but he maintained . . . intelligibility ratings of 90% for known context in conversation, unknown context in conversation, and intelligibility in conversation with request.'" (*Id.* at 814 (record citations omitted)).

Indeed, in February 2014, Hunt predicted that S.T.D.'s speech would improve within two years with continued speech therapy. As it turns out, she was correct. S.T.D. testified at the hearing that as of 2016, he no longer attends speech therapy. (R. 9, ID 120).

At bottom, the question is not whether Witcher can point to evidence that might have supported a contrary ruling. "An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The substantial-evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id.* (citation omitted).

So long as a "reasonable mind might accept the evidence as adequate to support [his] conclusion," I am bound to defer to the ALJ's findings. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). Because the ALJ's decision meets that standard, I, like Magistrate Judge Ruiz, decline to interfere with it.

Accordingly, it is hereby

ORDERED THAT the Magistrate Judge's Report and Recommendation (Doc. 13) be, and the same hereby is, adopted as the order of this court, and the Commissioner's decision be, and the same hereby is, affirmed.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge